**COMMONWEALTH of Pennsylvania,
Appellee**

v.

**Michelle Necole GRIFFITH, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 2, 2009.

Filed July 2, 2009.

Reargument Denied Sept. 11, 2009.

Jill M. Scheidt, Wyomissing, for appellant.

Alisa R. Hobart, Asst. Dist. Atty., Reading, for the Com., appellee.

BEFORE: LALLY–GREEN, BENDER, JJ. and McEWEN, P.J.E.

OPINION BY BENDER, J.:

¶ 1 Michelle Necole Griffith appeals the judgment of sentence imposed following her conviction of Driving Under the Influence of a Controlled Substance. 75 Pa. C.S. § 3802(d)(2). Griffith contends that the trial court erred in refusing to suppress prescription medication seized from the defendant's car after police transported her to a local hospital for blood testing. Griffith also asserts that the evidence adduced at trial was not sufficient to sustain a conviction under section 3802(d)(2), as the Commonwealth did not introduce expert testimony to establish that the medications found in her bloodstream could have impaired her ability to drive safely. Upon review, we concur in Griffith's conclusion that the evidence was not sufficient to sustain her conviction under section 3802(d)(2). Accordingly, we reverse said conviction, vacate the judgment of sentence, and remand this matter for re-sentencing.

¶ 2 The trial court, sitting as finder of fact, related the salient facts of this case as follows:

On May 5, 2006, at approximately 3:00 p.m. Officer William Dillman of the North Berks Regional Police Department was dispatched to investigate an orange Mitsubishi Eclipse that was driving recklessly. Officer Dillman located the orange Mitsubishi Eclipse in the parking lot of Penn Biomedical Support, Inc. The driver of the vehicle was identified as Michelle Necole Griffith, the Defendant. Officer Dillman immediately recognized the Defendant from prior contacts and personally knew that her driver's license was suspended.

Sergeant David Reichlein arrived on scene to assist Officer Dillman with the traffic stop of the Defendant. Sergeant Reichlein also immediately recognized the Defendant from prior contacts. Officer Dillman placed the Defendant under arrest for driving under the influence based on his observations of the Defendant and her performance during field sobriety testing, as well as information he had received from a complainant pertaining to the Defendant's extremely erratic driving.

After being advised of her rights, the defendant admitted to taking one medically prescribed Soma earlier in the day. Soma is also known as Carisoprodol. Prior to being placed in the back of the police vehicle for transport to St. Joseph's Medical Center the Defendant asked the officers to take care of her dog, which had been sitting in her vehicle during the encounter. The officers agreed and the Defendant gave Sergeant Reichlein her keys so he could run the air conditioning for the dog.

The Defendant was then transported to Saint Joseph's Medical Center where, after being advised of her rights, she consented to have a legal blood sample drawn for chemical testing purposes. After the Defendant was transported from the scene Sergeant Reichlein entered the Defendant's vehicle to run the air conditioning for the Defendant's dog.

Upon entering the Defendant's vehicle, Sergeant Reichlein observed what he immediately recognized to be prescription pill bottles in the open center console. Sergeant Reichlein picked up the prescription bottles and read the prescription label that stated the pills were

Carisoprodol, also known as Soma, and they were prescribed to the Defendant. Sergeant Reichlein seized all the prescription bottles and turned them over to Officer Dillman. Officer Dillman then called Saint Joseph's Medical Center six (6) times. During the fourth call Officer Dillman informed the lab that the prescription seized from the Defendant's vehicle was Carisoprodol. Due to the nature of the standard chemical testing, Carisoprodol is not regularly screened for and must be specifically tested for in order to determine its presence. Officer Dillman specifically requested Saint Joseph's test for Carisoprodol during his fourth call. The Defendant's blood contained 220 ng/ml of Nordiazepam.

Trial Court Opinion, 8/29/08, at 3–4.

¶ 3 Following her arrest, the Commonwealth charged Griffith with driving under the influence of a controlled substance, reckless driving, careless driving, driving on roadways laned for traffic, and driving while operating privilege is suspended or revoked. Following a preliminary hearing, Griffith filed a motion to suppress the pill bottles seized from the console of her car as well as the results of the blood test that police requested after the seizure, which verified the presence of Diazepam and Nordiazepam in Griffith's blood. The trial court denied Griffith's motion and, on March 7, 2007, convened a non-jury trial. At trial, both counsel stipulated the presence of the foregoing medications in Griffith's blood at therapeutic levels. In addition, the Commonwealth presented the testimony of Teresa Franke, the motorist who had alerted the police to Griffith's driving, and William H. Dillman, the officer who conducted the stop. Following the completion of the Commonwealth's case, Griffith elected not to testify and presented no other evidence. The court then found Griffith guilty as charged and deferred sentencing pending preparation

of an updated pre-sentence report. Thereafter, the court imposed a sentence of ninety days' to five years' imprisonment for driving under the influence of a controlled substance, and a concurrent term of sixty to ninety days' imprisonment for driving under suspension—DUI related. Griffith did not file a post sentence motion. Griffith has now filed this appeal, raising the following questions for our review:

A. Whether evidence of prescription pain medication obtained by police should have been suppressed when the same was obtained by way of unlawful search and seizure?

B. Whether the results of Appellant's blood sample should have been suppressed, when said results were tainted by and [a] result of the unlawful search and seizure described above?

C. Whether the Commonwealth presented sufficient evidence to demonstrate all elements of the crimes for which Appellant was convicted, particularly 75 Pa.C.S.A. 3802(D)(2), given the fact that no qualified or competent testimony was offered to demonstrate that the prescription drugs possessed by Appellant, which were schedule IV prescription medications, had any effect on her ability to safely drive, operate or be in actual physical control of the movement of a vehicle?

Brief for Appellant at 5 (capitalization minimized to improve readability).

¶ 4 Before proceeding with the merits of Griffith's claims, we observe that her third question, which challenges the legal sufficiency of the evidence to sustain her DUI conviction, is potentially dispositive of this appeal. Regardless of whether the evidence was unlawfully obtained, as Griffith argues in support of her first and second

questions, a finding that that same evidence was not sufficient to sustain the conviction she challenges would obviate any need to review the trial court's suppression order. Accordingly, we commence our review with the challenge to the sufficiency of the evidence asserted in Griffith's third question. Brief for Appellant at 17.

¶ 5 As a general matter, our standard of review of sufficiency claims requires that we evaluate the record "in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745, 751 (2000).

> "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." Nevertheless, "the Commonwealth need not establish guilt to a mathematical certainty," and may sustain its burden by means of wholly circumstantial evidence. Significantly, "[we] may not substitute [our] judgment for that of the factfinder; if the record contains support for the convictions they may not be disturbed."

*Commonwealth v. Brewer*, 876 A.2d 1029, 1032 (Pa.Super.2005) (citations omitted). So long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, his convictions will be upheld. *See Brewer*, 876 A.2d at 1032. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. *See Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa.Super.2001).

¶ 6 The conviction challenges arose from application of the specific requirements of 75 Pa.C.S. § 3802(d)(2), and may be affirmed only to the extent that the evidence adduced established beyond a reasonable doubt that her conduct was proscribed by its provisions. Section 3802(d) defines the circumstances under which an individual who has consumed controlled substances alone or in combination or in combination with alcohol may not operate a motor vehicle. That section provides as follows:

**§ 3802. Driving under influence of alcohol or controlled substance**

\* \* \* \*

**(d) Controlled substances.**—An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

(1) There is in the individual's blood any amount of a:

(i) Schedule I controlled substance, as defined in the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act;

(ii) Schedule II or Schedule III controlled substance, as defined in The Controlled Substance, Drug, Device and Cosmetic Act, which has not been medically prescribed for the individual; or

(iii) metabolite of a substance under subparagraph (i) or (ii).

(2) *The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.*

(3) The individual is under the combined influence of alcohol and a drug or combination of drugs to a degree which impairs the individual's ability

to safely drive, operate or be in actual physical control of the movement of the vehicle.

(4) The individual is under the influence of a solvent or noxious substance in violation of 18 Pa.C.S. § 7303 (relating to sale or illegal use of certain solvents and noxious substances).

75 Pa.C.S. § 3802(d) (emphasis added).

¶ 7 Notably, this section draws a distinction between driving under the combined influence of alcohol and controlled substances, *see* § 3802(d)(3) and driving under the influence of controlled substances alone, without the influence of alcohol, *see* § 3802(d)(2). Although our Courts have had limited opportunity to develop a body of decisional law surrounding these inherent differences,[1] we have observed that the effect of controlled substances on the ability of an individual to operate a motor vehicle is not within the ken of the average layperson and thus is properly the subject of expert testimony. *See Commonwealth v. Etchison*, 916 A.2d 1169, 1172–73; *see also id.* at 1175 (Bender, J., concurring) ("The effect of marijuana upon an individual and the significance of finding 53 nanograms of cannabinoids per milliliter is not a matter within the realm of a layperson. As such, expert testimony was necessary to draw a nexus from the findings to impairment[.]").

¶ 8 The need of expert testimony to establish a cause and effect relationship between ingestion of a controlled substance and inability to operate a motor vehicle is at the heart of Griffith's argument here. Relying on *Etchison*, Griffith argues that the Commonwealth produced no testimony to establish that her admitted use of a prescription dose of Soma (carisoprodol) or the therapeutic levels of diazepam and nordiazepam in her blood rendered her unable to safely operate a motor vehicle.[2] Brief for Appellant at 17. The Commonwealth concedes the absence from the record of any expert testimony on the effect of Griffith's medications on her ability to operate a motor vehicle but contends that the evidence of her erratic driving coupled with the presence of controlled substances in her bloodstream allows an inference of impairment sufficient to sustain her conviction under section 3802(d)(2). Brief for Appellee at 11 ("Although there was no expert evidence presented regarding the effect of these levels of controlled substances on her motor skills, the record demonstrates that Griffith was not in control of her body movements or her automobile at any time during this incident."). The Commonwealth reasons further that "[b]ecause no other explanation was provided for [Griffith's] lack of self-control or dangerous driving behavior, the trial court properly concluded that these actions were the result of her consumption of controlled substances." *Id.*

¶ 9 The trial court, concurring in the Commonwealth's position, cited our holding in *Commonwealth v. Smith*, 831 A.2d 636 (Pa.Super.2003), to establish that expert testimony need not be produced to sustain a conviction under a companion provision of section 3802 where the defendant has consumed alcohol and used a prescription medication. Trial Court Opinion, 8/29/08, at 8–9. The court concluded further that in the absence of expert testimony, the evidence concerning

---

1. Our research has revealed no appellate decision in which a defendant's conviction under section 3802(d)(2) was based upon ingestion of prescription medication alone.

2. Although Griffith admitted having taken a therapeutic dose of carisoprodol on the morning of this incident, the blood draw, conducted at 4:41 p.m., did not indicate the presence of that medication in her blood stream.

Griffith's erratic driving and her physical state during field sobriety testing amply established that her use of the medications found in her bloodstream rendered her incapable of safely operating a motor vehicle. *Id.* at 9 ("Clearly the evidence presented with respect to Appellant's driving suggests that she was unable to exercise judgment, to deliberate or to react prudently to changing circumstances and conditions. In addition, the evidence presented with respect to her physical faculties and her extremely poor performance during the administration of field sobriety tests indicates that she was under the influence of a controlled substance to a degree which rendered her incapable of safe driving.").

¶ 10 We need not quarrel with the trial court's conclusion that Griffith was incapable of safe driving on the afternoon in question, when police responded to a 911 call and found her unable to pass field sobriety tests. Both the testimony of the arresting officer and that of the motorist who first observed Griffith's driving documented Griffith's condition and actions. Based on that testimony, the trial court could and did find her guilty of reckless driving, careless driving, driving on roadways laned for traffic, and driving while operating privilege is suspended or revoked. Nevertheless, we reject the court's conclusion that the circumstantial evidence of Griffith's conduct coupled with the presence of prescription medication in her blood stream was sufficient to sustain a conviction for DUI under section 3802(d)(2) in the absence of expert testimony. In this regard, our holding in *Smith* is distinguishable and therefore of limited persuasive value in informing our decision here.

¶ 11 In *Smith,* a panel of this Court addressed the claims of a defendant convicted of simple DUI, having operated a vehicle under the influence of alcohol. *Id.* at 637 (citing 75 Pa.C.S. § 3731(a)(1), *repealed by* 2003, Sept. 30, P.L. 120, No. 24, § 14, effective Feb. 1, 2004). On appeal, the defendant argued that the trial judge erred in refusing to recognize a defense of involuntary intoxication based on her assertion that a medically prescribed duragesic patch amplified the effect of alcohol she consumed and rendered her intoxicated. *Id.* at 638–39. The defendant grounded her claim in the assertion that she should not be held culpable for the effect of a prescription medication in combination with alcohol when she had not known of a potential synergistic effect. *Id.* at 640. Nevertheless, she failed to introduce expert testimony to establish that such an effect had occurred or could occur. *Id.* We concluded accordingly, that regardless of whether the defense of involuntary intoxication would be accepted in Pennsylvania, the defendant had not introduced sufficient evidence to establish her defense:

> To absolve Appellant of criminal behavior by the complete defense of involuntary intoxication, she had the burden to show such intoxication by a preponderance of the evidence. If this defense is to be relied upon, Appellant must show that the combination is capable of causing the extreme intoxication which is alleged. The trial court cannot take judicial notice of this fact. Thus, at a minimum it will be necessary to present expert witnesses to establish this effect. Here, the only evidence of record is Appellant's self-serving statements that she had not read any of the labeling and was not told by her doctor of any possible side effects and thus was unaware of the alleged heightened effect of the patch when combined with alcohol consumption. Appellant did not present her physician or any other medical expert to establish that an increased inebriating effect was even possible. It

follows that Appellant has not come close to putting the integrity of the conviction into question.

*Id.* at 641 (internal citations omitted).

¶ 12 Our holding in *Smith* in no way undermines Griffith's position here. Unlike the defendant in *Smith*, who asserted a defense and therefore bore a burden of persuasion to establish her claim by a preponderance of the evidence, Griffith challenges the sufficiency of the evidence to sustain her conviction from the outset. The burden of proof remained with the Commonwealth throughout the proceedings in the trial court, compelling the prosecution to establish the elements specified by section 3802(d)(2) beyond a reasonable doubt. Those elements include not merely the defendant's "[in]ability to safely drive, operate or be in actual physical control of the movement of the vehicle," but also that the defendant's impairment was caused by the influence of a drug or combination of drugs. For this task, circumstantial evidence upon which the Commonwealth and the trial court relied is not in itself enough where, as here, blood testing verified the presence of prescription medication only.

■ ¶ 13 As we suggested in *Smith* and later echoed in *Etchison*, such an evidentiary demarcation is necessitated by the inability of the trial court or any member of the jury to take notice of the effect of prescription medication on the human body, either alone or in combination with another controlled substance, in the absence of expert testimony. Whereas the intoxicating effect of alcohol is widely known and recognized by the average layperson, *see Smith*, 831 A.2d at 640, the same cannot be said of prescription medications, either alone or in combination with other controlled substances, *see Etchison*, 916 A.2d at 1175 (Bender J. concurring) (opining that expert testimony is necessary to establish that low level of cannabinoids present in the defendant's bloodstream rendered him incapable of safely operating a motor vehicle so as to sustain conviction under sections 3802(d)(2), (3)). Thus, while the factfinder (either a lay jury or a trial judge presiding over a non-jury trial) may reach a cause and effect determination on circumstantial evidence that the defendant was rendered incapable of safe driving due to consumption of *alcohol*, it must be afforded expert testimony concerning the effects and interactions of *prescription medications* where such medications are the alleged intoxicants. Without such testimony, the effects or interactions of the medications at issue are rendered uncertain, inviting the factfinder to assume the effect of a controlled substance based merely on the fact that the defendant's conduct followed his ingestion of the controlled substance, or worse, the absence of any other explanation for his conduct. Although such inferences may be acceptable in the civil arena, subject to a lesser standard of proof and more limited constitutional protections, their insertion into a criminal prosecution imposes an unacceptable burden upon the defendant, who has no obligation to disprove the Commonwealth's case or posit any explanation for his conduct.

■ ¶ 14 In this case, the Commonwealth introduced only fact testimony, calling the motorist who witnessed Griffith's erratic driving and the police officer who responded to the scene and conducted the arrest. Although the officer was able to observe and report on Griffith's condition and to reach a conclusion that she was not able to safely operate a motor vehicle, he was neither able nor qualified to testify concerning drug interactions or effects. In point of fact, the Commonwealth elicited no testimony concerning the medications at trial, instead confining its examination to the defendant's condition and the

results of her blood test. Thus, the factfinder had no evidence on which to base a finding that Griffith's erratic driving was the result of her ingestion of carisoprodol, diazepam, or nordiazepam, either singly or in combination. The fact that Griffith displayed physical symptoms out of the ordinary does not, in and of itself, establish a sufficient basis for finding a causal link with ingestion of any particular drug. In the absence of expert testimony, the factfinder might have concluded just as easily that Griffith's physical symptoms were the result of the illness or condition the medications had been prescribed to treat.[3] Thus, while the evidence adduced may have established Griffith's guilt of careless driving, reckless driving and driving on roadways laned for traffic, it was not sufficient to prove her guilt of driving under the influence of controlled substances pursuant to 75 Pa.C.S. § 3802(d)(2).

¶ 15 Because the evidence adduced was not sufficient to sustain the conviction Griffith challenges, the issue of the legality of police action in obtaining that evidence is rendered moot on the facts of this case. Accordingly, we need not address Griffith's first two questions.

¶ 16 For the foregoing reasons, we reverse Griffith's conviction under 75 Pa.C.S. § 3802(d)(2).

¶ 17 Conviction under 75 Pa.C.S. § 3802(d)(2) **REVERSED.** Judgment of sentence **VACATED.** Case **REMANDED** for re-sentencing consistent with this Opinion.

¶ 18 Judge LALLY–GREEN files a dissenting statement.

---

**3.** Although the record establishes that Griffith's medications were dispensed by licensed pharmacies by prescription of her physicians,

## DISSENTING STATEMENT BY LALLY–GREEN, J.:

¶ 1 While the majority sets forth a persuasive rationale in support of its result, I respectfully dissent.

¶ 2 I believe the Commonwealth presented sufficient evidence in support of Appellant's conviction under 75 Pa.C.S.A. § 3802(d)(2). As the trial court found, Appellant exhibited erratic driving prior to the traffic stop. She admitted to police that she ingested controlled substances. After police stopped her, Appellant's hands were too shaky to light a cigarette and she failed three field sobriety tests. I believe the evidence of record is sufficient to support a finding, beyond reasonable doubt, that Appellant violated § 3802.

¶ 3 Further, I would not announce a rule requiring the submission of expert testimony. Here, the record hints of no explanation for Appellant's conduct other than her ingestion of drugs. Our case law is clear that expert testimony is not a necessary part of proof of a violation under § 3802(d)(2) in all cases.

¶ 4 Moreover, I would reject Appellant's argument that the seizure of several prescription pill bottles was not warranted under the plain view doctrine. Appellant asked a police officer to enter her car to care for her dog. Upon entering Appellant's vehicle, the officer observed, in plain view, several open pill bottles in the center console of Appellant's car. The officer immediately recognized them as containing controlled substances. The officer knew, at the time of the seizure of the open pill bottles, that Appellant had admitted to ingesting controlled substances prior to driving. Under these circumstances, the officer had probable cause to believe that

it does not establish her underlying physical conditions or illnesses.

the pill bottles were evidence of Appellant's commission of a crime. Thus, he was justified in seizing them under the plain view doctrine. *Commonwealth v. Ellis*, 541 Pa. 285, 662 A.2d 1043 (1995).[1]

¶ 5 Since I believe that none of Appellant's arguments warrants relief, I would affirm the judgment of sentence. Accordingly, I respectfully dissent.

---

1. Appellant also argues that the blood test should be suppressed because it came about only as a result of the illegal seizure of the pill bottles. Since I believe the seizure of the pill bottles was proper, I would conclude that this argument lacks merit.