**Joseph MARONE**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 4, 2009.

Decided Jan. 5, 2010.

Publication Ordered March 3, 2010.

1. For example, the fact that the abuses occurred in bed at night would have no value if considered in a vacuum.

Philip M. Bricknell, Asst. Counsel and Andrew S. Gordon, Chief Counsel, Harrisburg, for appellant.

No appearance was entered on behalf of appellee.

BEFORE: PELLEGRINI, Judge, FRIEDMAN, Senior Judge, and QUIGLEY, Senior Judge.

OPINION BY Judge PELLEGRINI.

The Department of Transportation, Bureau of Driver Licensing (Department) appeals from an order of the Court of Common Pleas of Philadelphia County (trial court) reversing the Department's one-year suspension of Joseph Marone's (Licensee) driving privileges following Licensee's refusal to submit to chemical testing following his arrest for driving under the influence.

The testimony of Officers Barry Bennett (Officer Bennett) and Deborah Kiker (Officer Kiker) of the City of Philadelphia Police Department in an evidentiary hearing before the trial court constitutes the only account of what occurred in this case, as Licensee elected not to testify before the trial court or file a brief in this appeal.

At approximately 5:00 a.m. on Monday, February 18, 2008, Officer Bennett responded to a disturbance at a Walgreen's pharmacy in which Licensee and the store security officer were engaged in a verbal dispute over a pack of Tastykakes. At the time, Licensee did not appear to be under the influence of drugs or alcohol. Approximately one hour later, Officer Bennett observed in a McDonald's parking lot a

vehicle that was parked and running and had the headlights on, but he could not see anyone in the driver's seat. Twenty minutes later, the vehicle remained in the same condition, so Officer Bennett decided to investigate. He found Licensee passed out in the driver's seat with his body slumped over the center console with his face inside of a McDonald's bag on the passenger seat. Officer Bennett opened the door and attempted to awaken Licensee when he saw three pill bottles: one on the passenger's seat, one on the passenger's floor, and one on the driver's seat, with pills spilled out all over the front of the vehicle. At least two of the pill bottles had Licensee's name on them.[1] Licensee had no odor of alcohol on him, but as he was revived, he became very belligerent, drifted in and out of consciousness, had trouble standing, had bloodshot eyes and very slurred speech, and was spitting out half-eaten food from his mouth. Licensee was placed under arrest for driving under the influence and placed into a patrol wagon where he alternated between being very violent and belligerent with periods of calmness. Because of his belligerence, a supervisor was called to the scene and produced a taser but did not use it on Licensee.

Licensee was transported to Methodist Hospital where Officer Kiker met with him while he was still in the patrol wagon. Licensee was ranting and raving in the back of the vehicle and was very aggressive. Officer Kiker read Licensee the O'Connell warnings[2] and requested that he submit to a blood test. Licensee responded that he would not take any blood test and threatened her, stating that she did not know who his father was and that everyone would lose their jobs. Fearing for her safety, Officer Kiker did not make further attempts to administer the blood test. As a result of his refusal to submit to the blood test, the Department suspended Licensee's driving privileges for one year pursuant to Section 1547(b)(1) of the Vehicle Code, 75 Pa.C.S. § 1547(b)(1).[3]

■ Licensee appealed to the trial court, which reversed the license suspension following an evidentiary hearing where Officers Bennett and Kiker testified as described above. The trial court held that Officer Bennett's conclusion that Licensee was operating the vehicle while under the influence of a controlled substance was pure conjecture, and that the only reasonable conclusion given that Licensee was not intoxicated at Walgreen's an hour-and-a-half earlier was that Licensee became impaired after ingesting his prescription medication, which could have occurred either before or after arriving at the McDonald's parking lot. The Department then appealed to this Court.[4]

On appeal, the Department contends that Officer Bennett did have reasonable grounds to arrest and request chemical

---

1. There was no testimony regarding the types of medication involved.

2. *Department of Transportation v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989).

3. Section 1547(b)(1) provides:

If any person placed under arrest for a violation of section 3802 [driving under the influence] is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows: (i) except as set forth in subparagraph (ii), for a period of 12 months.

4. Our standard of review in a license suspension case is to determine whether the factual findings of the trial court are supported by competent evidence and whether the trial court committed an error of law or an abuse of discretion. *Department of Transportation, Bureau of Driver Licensing v. Boucher*, 547 Pa. 440, 691 A.2d 450 (1997).

testing of Licensee because he was found in the driver's seat of a running vehicle in a semi-conscious state surrounded by pills and pill bottles. It argues that the evidence was sufficient to allow Officer Bennett to conclude that Licensee operated the vehicle while intoxicated, requiring reinstatement of the license suspension due to his failure to submit to chemical testing.

■ The Department must establish four elements to sustain a suspension of a licensee's driving privileges for refusing to submit to a chemical test: (1) the licensee was arrested for driving under the influence by a police officer who had reasonable grounds to believe that the licensee was operating or was in actual physical control of the movement of the vehicle while under the influence of alcohol or a controlled substance; (2) the licensee was asked to submit to a chemical test; (3) refused to do so; and (4) was warned that refusal might result in a license suspension. *Banner v. Department of Transportation, Bureau of Driver Licensing*, 558 Pa. 439, 445, 737 A.2d 1203, 1206 (1999). Only the first element is at issue in this case.

■ The standard of reasonable grounds to support a license suspension is a lesser standard than the probable cause standard needed to support a DUI conviction. *Banner*, 558 Pa. at 446, 737 A.2d at 1207. The standard is not a demanding one. *Vinansky v. Department of Transportation, Bureau of Driver Licensing*, 665 A.2d 860 (Pa.Cmwlth.1995). Reasonable grounds exist when a person in the position of the police officer, viewing the facts and circumstances as they appeared at the time, could have concluded that the motorist was operating the vehicle while under the influence of an intoxicating substance. *Banner*, 558 Pa. at 446–47, 737 A.2d at 1207. This is determined by examining the totality of the evidence, including the location of the vehicle, whether the engine was running, whether there was evidence that the licensee had driven the vehicle before the arrival of the police, the licensee's general appearance, and the licensee's behavior. *Id.; Department of Transportation v. Berta*, 120 Pa.Cmwlth. 558, 549 A.2d 262 (1988). Reasonable grounds do not require that other possible explanations or inferences that the officer could have made be unreasonable. *Riley v. Department of Transportation, Bureau of Driver Licensing*, 946 A.2d 1115, 1120 (Pa.Cmwlth.2008). Whether reasonable grounds exist is a question of law reviewable by this court on a case-by-case basis. *Department of Transportation, Bureau of Driver Licensing v. Malizio*, 152 Pa. Cmwlth. 57, 618 A.2d 1091 (1992).

■ It is not necessary for the police officer to have reasonable grounds that the intoxicated person was driving the vehicle, but merely reasonable grounds that the intoxicated person was operating or had control of the vehicle. For operation or control, it is not necessary that the vehicle be moving, but rather there must only be some objective evidence that the licensee had in the past, while intoxicated, operated or exercised control over the movement of the vehicle. *Vinansky*, 665 A.2d 860 (actual physical control found where licensee was slumped over steering wheel of vehicle parked in parking lot with the engine running and brake lights on); *see also Department of Transportation, Bureau of Driver Licensing v. Paige*, 156 Pa.Cmwlth. 600, 628 A.2d 917 (1993) (actual physical control found where licensee was asleep, slumped over steering wheel of vehicle parked on street with the parking lights on and the key in the ignition); *Polinsky v. Department of Transportation*, 131 Pa.Cmwlth. 83, 569 A.2d 425 (1990) (reasonable grounds to believe licensee had physical control of vehicle when she was found asleep behind the wheel parked next to

fast food pick-up window with headlights on and transmission in gear, although engine not running); *Department of Transportation, Bureau of Traffic Safety v. Farner*, 90 Pa.Cmwlth. 201, 494 A.2d 513 (1985) (control over vehicle where licensee was found behind wheel while parked in a traffic lane with the engine running and lights on but with vehicle in park).

 Here, Officer Bennett found Licensee passed out in the driver's seat of his vehicle with his body slumped over the center console and his head inside a McDonald's bag on the passenger seat with half-eaten food in his mouth. Upon being revived, he was belligerent, violent, had trouble standing, had bloodshot eyes and badly slurred his speech. He was surrounded by three open pill bottles that had their contents strewn about the interior of the vehicle. These facts are sufficient to have given Officer Bennett reasonable grounds to believe Licensee was intoxicated. Furthermore, Licensee's location in the driver's seat of his vehicle with the engine running and lights on, coupled with Officer Bennett's knowledge that Licensee was at another location an hour-and-a-half earlier, is sufficient to have given Officer Bennett reasonable grounds to believe that Licensee had been in operation or control of the vehicle while he was intoxicated.

While it is true, as the trial court concluded, that Licensee may have only become intoxicated after parking in the McDonald's and thereafter taking his prescription medications, the existence of another reasonable explanation does not vitiate an officer's reasonable grounds. *Riley, supra.* Furthermore, it is irrelevant that Licensee's intoxication may have been caused in whole or in part by prescription medication rather than by alcohol or an illegal substance, as driving under the influence may be found when the intoxication is caused by prescription medication. *See Commonwealth of Pennsylvania v. Griffith*, 985 A.2d 230 (Pa.Super.2009); *Commonwealth v. Smith*, 831 A.2d 636 (Pa.Super.2003).

Because Officer Bennett had reasonable grounds to believe that Licensee was operating or in control of his vehicle while intoxicated, Officer Kiker properly requested that Licensee undergo a blood test. The Department properly suspended Licensee's driving privileges for one year for his refusal to submit to the test.

For the foregoing reasons, the order of the trial court is reversed.

### *ORDER*

AND NOW, this *5th* day of *January*, 2010, the order of the Court of Common Pleas of Philadelphia County, dated March 27, 2009, is reversed.