IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Gerald George Vidic | : |
| | : |
| v. | : |
| | : |
| Commonwealth of Pennsylvania, | : |
| Department of Transportation, | : |
| Bureau of Driver Licensing, | : No. 842 C.D. 2016 |
| Appellant | : Submitted: November 23, 2016 |

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI                    FILED: December 22, 2016


        The Department of Transportation, Bureau of Driver Licensing (Department) appeals the Court of Common Pleas of Beaver County's (trial court) reversal of the Department's 18-month suspension of Gerald George Vidic's (Licensee) operating privileges for refusing to submit to chemical testing following his arrest for driving under the influence (DUI).  For the reasons that follow, we reverse.


        By official notice dated November 16, 2015, the Department notified Licensee that his operating privileges were suspended for a period of 18 months

pursuant to Section 1547(b)(1)(ii) of the Vehicle Code[1] for refusing to submit to chemical testing. Licensee appealed.

Before the trial court, Officer Daniel O'Leary (Officer O'Leary) of the Conway Borough Police Department testified that on July 26, 2015, he received a radio call from the Beaver County Dispatch Center (Dispatch) that a male appeared to be intoxicated at the Conway Superette. Officer O'Leary acknowledged the call and then received a second report from Dispatch that the male was entering a red 1973 Dodge Charger. This information was received by

---

[1] 75 Pa. C.S. § 1547(b)(1)(ii). That provision of the Code provides as follows:

> (b) Suspension for refusal.—
>
> (1) If any person placed under arrest for a violation of section 3802 [driving under influence of alcohol or controlled substance] is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:
>
> . . .
>
> (ii) For a period of 18 months if any of the following apply:
>
> . . .
>
> (B) The person has, prior to the refusal under this paragraph, been sentenced for:
>
> (I) an offense under section 3802.

Licensee was previously convicted of DUI on March 24, 2010.

Dispatch from an anonymous caller. Officer O'Leary then received a radio report from a New Sewickley Township police officer that he had observed Licensee driving the subject vehicle earlier that day. Officer O'Leary testified that he was familiar with Licensee and knew what he looked like.

Officer O'Leary testified that as he was leaving the police station, Licensee drove by in his Dodge Charger and waved at him while making a left turn. Officer O'Leary assumed he was going to take Route 65 towards his residence. Officer O'Leary then drove to Route 65, and when he did not observe Licensee's vehicle, he turned around, drove back into town and found Licensee's vehicle parked at Haglan's Bar. Officer O'Leary parked his vehicle in the bar parking lot and was approached by the owner of the bar, who advised him that Licensee had previously been banned from the bar and was not allowed to be inside.

Officer O'Leary testified that when he entered Haglan's Bar, Licensee was seated at the bar with a full glass of beer in front of him. He identified himself, asked Licensee to walk outside, and observed that Licensee was "completely unsteady on his feet" and he "was concerned for his ability to stand." (Reproduced Record (R.R.) at 25a.) Once outside, Officer O'Leary observed Licensee's clothes were completely disheveled, his face was red, his eyes were glassy and bloodshot, and he "was sweating profusely and smelled of an intoxicating beverage." (R.R. at 25a, 27a.) Officer O'Leary asked Licensee if he had consumed an intoxicating beverage and Licensee responded yes, "a couple."

3

(R.R. at 42a.) Officer O'Leary estimated that at this point, it had been five to ten minutes since he observed Licensee drive by the police station.

Officer O'Leary advised Licensee of the report he received and asked him to submit to some tests. Officer O'Leary then administered a Horizontal Gaze Nystagmus (HGN) test, which Licensee failed, and a portable breath test which indicated a blood alcohol content of over 0.20%. Additional field sobriety tests were not performed as Licensee indicated that his legs and knees hurt and he would not be able to perform the balance tests.

Given all of these factors, Officer O'Leary believed that Licensee was intoxicated, placed him under arrest and drove him to Heritage Valley Beaver Medical Center for chemical testing. Once at the hospital, Licensee was asked if he would consent to a blood test, and he said that he would not. Officer O'Leary then read the DL-26 Implied Consent Warning Form to Licensee and Licensee again refused testing. Officer O'Leary testified that he showed Licensee the DL-26 Form and he again refused. After the refusal, Licensee was taken back to the police station and released into the custody of his son.

On cross-examination, Officer O'Leary admitted that the first contact he had with Licensee on the night in question occurred when he saw Licensee drive past the police station. Officer O'Leary also testified that he only observed Licensee driving for a short distance while he was trying to get into his patrol car,

4

and that he did not observe Licensee commit any traffic violations in that short period.[2]

The trial court sustained Licensee's appeal because "the evidence presented did not rise to the required standard of reasonable grounds to believe that at the time the [Licensee] was operating his motor vehicle, he was under the influence of alcohol." (R.R. at 118a.) The trial court noted that the anonymous caller did not testify and was not questioned as to the basis of her opinion, and she was the only individual who saw Licensee "appearing intoxicated." (R.R. at 116a.) The trial court also noted that there were no indications that Licensee committed a moving violation when Officer O'Leary briefly saw him driving past the police station, and there was no testimony presented or statements given by anyone who saw Licensee drinking prior to driving. This appeal followed.[3]

To sustain a suspension of driving privileges under Section 1547 of the Vehicle Code, 75 Pa.C.S. § 1547, the Department must establish that:

> (1) the licensee was arrested for driving under the influence by a police officer who had reasonable grounds to believe that the licensee was operating or was in actual physical control of the movement of the vehicle while under the influence of alcohol or a controlled substance;

---

[2] Licensee did not testify on his own behalf nor did he call any witnesses.

[3] Our standard of review in a license suspension case is limited to determining whether the trial court erred as a matter of law or abused its discretion or whether the factual findings are supported by competent evidence. *Marone v. Department of Transportation, Bureau of Driver Licensing*, 990 A.2d 1187, 1189 n.4 (Pa. Cmwlth. 2010).

5

(2) the licensee was asked to submit to a chemical test; (3) refused to do so; and (4) was warned that refusal might result in a license suspension.

*Marone v. Department of Transportation, Bureau of Driver Licensing*, 990 A.2d 1187, 1190 (Pa. Cmwlth. 2010) (citing *Banner v. Department of Transportation, Bureau of Driver Licensing*, 737 A.2d 1203, 1206 (Pa. 1999)).  Only the first element is at issue in this case as the Department contends that the trial court erred as a matter of law in determining that Officer O'Leary did not have reasonable grounds to believe that Licensee was under the influence of alcohol while he was in control of a vehicle.[4]

To have reasonable grounds to request a licensee to submit to chemical testing is not a demanding one, *Marone*, 990 A.2d at 1190 (citing *Vinansky v. Department of Transportation, Bureau of Driver Licensing*, 665 A.2d 860 (Pa. Cmwlth. 1995)); in fact, it is a lesser standard than that of probable cause needed to support a conviction for driving under the influence.  *See Marone*, 990 A.2d at 1190; *Banner*, 737 A.2d at 1207.  "Reasonable grounds exist when a person in the position of the police officer, viewing the facts and circumstances as they appeared at the time, *could* have concluded that the motorist was operating the vehicle while under the influence of intoxicating liquor."  *Walkden v. Department of Transportation, Bureau of Driver Licensing*, 103 A.3d 432, 436 (Pa. Cmwlth. 2014) (quoting *Banner*, 737 A.2d at 1207) (emphasis added).  This issue is

_____

[4] "Whether reasonable grounds exist is a question of law reviewable by this Court on a case-by-case basis." *Marone*, 990 A.2d at 1190 (citation omitted).

determined by examining the totality of the circumstances, including the location of the vehicle, whether there was evidence that the licensee had driven the vehicle before the arrival of the police, the licensee's general appearance and behavior, and the odor of alcohol. *See Walkden*, 103 A.3d at 436-37; *Marone*, 990 A.2d at 1190.

Here, the totality of the circumstances support Officer O'Leary's conclusion that Licensee was under the influence when operating his vehicle. Officer O'Leary received two calls from Dispatch stating that an individual appeared intoxicated at the Superette, and that individual was then seen getting into a red 1973 Dodge Charger. He then learned from another officer that the individual in question was Licensee, as that officer saw Licensee in the subject vehicle earlier that day. Officer O'Leary was familiar with Licensee and when he walked out of the police station to get into his patrol car, Officer O'Leary witnessed Licensee drive by and wave to him. Within five to ten minutes, Officer O'Leary was able to locate Licensee at a local bar. Officer O'Leary testified that Licensee was extremely unsteady on his feet, his face was red, his eyes were glassy and bloodshot, and he smelled of alcohol. Licensee failed the HGN test and the results of his breathalyzer were over 0.20%, well over the legal limit. Given all of these facts, Officer O'Leary had reasonable grounds to arrest Licensee and request that he submit to chemical testing.

The trial court placed great emphasis on the fact that Officer O'Leary did not personally witness Licensee commit a moving violation in the very brief period of time that he saw him drive past the police station. However, it is not necessary for an officer to even witness a licensee operating a vehicle – let alone

7

observe him commit a moving violation – in order to have reasonable grounds to place him under arrest for driving under the influence. *See Walkden*, 103 A.3d at 437 (collecting cases); *Schlag v. Department of Transportation, Bureau of Driver Licensing*, 963 A.2d 598, 603 (Pa. Cmwlth. 2009). Moreover, an officer's reasonable grounds can be based on information received from a third party. *Schlag*, 963 A.2d at 603 (citing *Gasper v. Department of Transportation, Bureau of Driver Licensing*, 674 A.2d 1200 (Pa. Cmwlth. 1996)).

Also, while it is conceivable,[5] as the trial court points out, that Licensee may have become intoxicated *after* arriving at Haglan's Bar, the existence of another reasonable explanation does not vitiate Officer O'Leary's reasonable grounds. It is well established that the existence of reasonable alternative conclusions does not bar the officer's actual belief from being reasonable. *Schlag*, 963 A.2d at 603 (citation omitted). "[F]or 'reasonable grounds' to exist, the police officer obviously need not be correct in his belief that the motorist had been driving while intoxicated. We are dealing here with the authority to request a person to submit to a chemical test and not the admission into evidence of the result of such a test." *Bashore v. Department of Transportation, Bureau of Driver Licensing*, 27 A.3d 272, 275 (Pa. Cmwlth. 2011) (quoting

---

[5] There was no evidence presented before the trial court regarding blood alcohol levels and the time it takes for alcohol to be absorbed into the bloodstream. However, we note that it was reasonable for Officer O'Leary to conclude that it was impossible for Licensee to have become as intoxicated as he appeared in the five to ten minutes between when Dispatch first called and the time Officer O'Leary confronted Licensee at Haglan's Bar. *See Walkden*, 103 A.3d at 438 (citing *Hasson v. Department of Transportation, Bureau of Driver Licensing*, 866 A.2d 1181, 1186 (Pa. Cmwlth. 2005) ("Case law in DUI criminal cases teaches that alcohol is not intoxicating until absorbed into the bloodstream and that absorption takes place thirty to ninety minutes after consumption.")).

8

*Department of Transportation, Bureau of Traffic Safety v. Dreisbach*, 363 A.2d 870, 872 (Pa. Cmwlth. 1976)). *See Schlag*, 963 A.2d at 603 ("[T]he test is whether the officer's conclusion was reasonable as a matter of law, not whether [the trial court] might have concluded otherwise had [it] stood in the officer's shoes.") (quoting *Helt v. Department of Transportation, Bureau of Driver Licensing*, 856 A.2d 263 (Pa. Cmwlth. 2004)) (alterations in original). *See also Walkden*, 103 A.3d at 438; *Marone*, 990 A.2d at 1191.

Because Officer O'Leary had reasonable grounds to believe that Licensee was operating or in control of his vehicle while intoxicated, he properly requested that Licensee undergo a blood test and the Department properly suspended Licensee's operating privileges for refusing to submit to that test.

Accordingly, the order of the trial court is reversed and the suspension of Licensee's operating privileges is reinstated.

_____
DAN PELLEGRINI, Senior Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gerald George Vidic             :
                                           :
                 v.                       :
                                           :

Commonwealth of Pennsylvania,   :
Department of Transportation,     :
Bureau of Driver Licensing,        :
                    Appellant    :   No. 842 C.D. 2016

**O R D E R**

AND NOW, this 22nd day of December, 2016, the order of the Court of Common Pleas of Beaver County in the above-captioned matter is reversed and the 18-month suspension of Gerald George Vidic's operating privileges is reinstated.

_____
DAN PELLEGRINI, Senior Judge