IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Clint R. Tucker,                                   :
               Appellant          :
                                           :
               v.                 :   No. 221 C.D. 2019
                                           :   Submitted: July 19, 2019
Commonwealth of Pennsylvania,              :
Department of Transportation,              :
Bureau of Driver Licensing                 :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                  HONORABLE ROBERT SIMPSON, Judge[1]
                  HONORABLE MICHAEL H. WOJCIK, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                FILED: November 21, 2019

          Clint R. Tucker (Licensee) appeals an order of the Court of Common Pleas of Dauphin County (trial court) denying his appeal of an 18-month suspension of his operating privilege under Section 1547(b)(1)(ii) of the Vehicle Code, 75 Pa. C.S. §1547(b)(1)(ii),[2] and a one-year disqualification of his commercial driving

---

[1] This matter was assigned to this panel before September 1, 2019, when Judge Simpson assumed the status of senior judge.

[2] Section 1547(b)(1)(ii), commonly referred to as the Implied Consent Law, reads, in pertinent part, as follows:

    (1) If any person placed under arrest for a violation of section 3802 [relating to driving under influence of alcohol or controlled substance] is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:

                                   * * *

    (ii) For a period of 18 months if any of the following apply:

        (A) The person's operating privileges have previously been suspended under this subsection.

        (B) The person has, prior to the refusal under this paragraph, been sentenced for:

privilege under Section 1613 of the Vehicle Code, 75 Pa. C.S. §1613.[3]  Licensee argues that the arresting officer lacked reasonable grounds to believe Licensee had operated his truck while under the influence of alcohol.  For the following reasons, we affirm.

On May 26, 2018, Licensee was arrested for suspicion of driving under the influence of alcohol.  On June 26, 2018, the Department of Transportation, Bureau of Driver Licensing (PennDOT), mailed two notices to Licensee.  The first notice informed Licensee that his operating privilege would be suspended for 18 months as a result of his refusal to submit to chemical testing at the time of his arrest.

---

> (I)    an offense under section 3802;
>
> (II)    an offense under former section 3731;
>
> (III) an offense equivalent to an offense under subclause (I) or (II); or
>
> (IV) a combination of the offenses set forth in this clause.

75 Pa. C.S. §1547(b)(1)(ii).  The record indicates that Licensee was convicted on April 15, 2008, of violating California's law against driving under the influence (DUI).  He was also convicted on September 28, 2012, of violating Ohio's DUI law.  *See* Reproduced Record at 66, 68-69 (R.R.__).

[3] Section 1613(d.1) states, in relevant part, as follows:

> Upon receipt of a report of test refusal, the department shall disqualify the person who is the subject of the report for the same period as if the department had received a report of the person's conviction for violating one of the offenses listed in section 1611(a) (relating to disqualification).

75 Pa. C.S. §1613(d.1). Section 1611(a)(1) of the Vehicle Code provides, in turn:

> (a) First violation of certain offenses.--Upon receipt of a report of conviction, the department shall, in addition to any other penalties imposed under this title, disqualify any person from driving a commercial motor vehicle or school vehicle for a period of one year for the first violation of:
>
> > (1) section 3802 (relating to driving under influence of alcohol or controlled substance) or former section 3731, where the person was a commercial driver at the time the violation occurred.

75 Pa. C.S. §1611(a)(1).

The second notice informed him that his commercial driving privilege was disqualified for one year for the same reason. Licensee appealed to the trial court, challenging both the suspension and the disqualification.

The trial court held a hearing on January 31, 2019. PennDOT presented the testimony of Pennsylvania State Police Trooper Trey Geyer. He explained that while on patrol on the night of May 25, 2018, he and his partner were dispatched to the Pilot Travel Center in Reed Township, Dauphin County, to do a welfare check on Licensee. The troopers had received information that Licensee was intoxicated and had cut off all lines of communication with his family and friends.

Trooper Geyer testified that as he approached the front of Licensee's tractor-trailer, he heard the engine idling. When he shined a flashlight through the windshield, he saw Licensee in the driver's seat. Trooper Geyer climbed onto the truck, knocked on the driver's side door and, after verifying Licensee's identity, asked Licensee to exit the vehicle. Trooper Geyer explained to Licensee that he and his partner were there to check on Licensee's welfare. Trooper Geyer testified that Licensee exhibited "apparent signs of intoxication," such as "glassy bloodshot eyes, slurred speech, and a strong odor of an alcoholic beverage." Notes of Testimony, 1/31/2019, at 9 (N.T.__); Reproduced Record at 27 (R.R.__). Trooper Geyer conducted "the horizontal gaze nystagmus test, the walk and turn, and the one-leg stand," during which Licensee displayed signs of impairment. *Id.* Trooper Geyer administered a preliminary breath test to Licensee, which registered 0.221 percent.

In the vehicle's cabin, Trooper Geyer observed an empty six pack of beer and beer bottles in the cup holder closest to the driver's seat. He also observed that the keys to the vehicle were not in the ignition. Licensee was then placed under arrest and taken to the Dauphin County Judicial Center. Trooper Geyer read the

3

warnings contained in PennDOT's Implied Consent Form DL-26B verbatim to Licensee. Licensee refused to consent to a chemical blood test.

On cross-examination, Trooper Geyer acknowledged that he did not establish at the scene of the arrest how long the vehicle had been parked or how long Licensee had been inside the vehicle. Trooper Geyer acknowledged that Licensee indicated the truck's key was not in the ignition, but he did not recall Licensee further explaining any operational features of the truck.

Licensee testified on his own behalf. He stated that he had parked his vehicle at the travel center at around 12:30 p.m. and consumed alcohol at an adult establishment nearby. Licensee testified that he was relaxing in the "sleeper room" of his truck when Trooper Geyer and his partner arrived. N.T. 27; R.R. 45. He stated he had consumed "a little over a 12 pack" of beer after he parked the vehicle and was "pretty lit." N.T. 28-29; R.R. 46-47. Licensee testified he had not moved the vehicle since he had parked it and had not intended to drive again for 34 hours.

Licensee testified about the vehicle's battery management feature. He explained that the vehicle has a separate set of batteries for operating devices such as heaters, air conditioners and the electronics in the sleeper cabin. Licensee stated that if the battery level drops below a certain point, the engine automatically turns on so that the battery can be recharged. This feature engages even if the driver is not in the vehicle or the keys are not in the ignition. Licensee explained that when the vehicle is in this mode, the engine shuts off if the driver engages the clutch or brakes, puts the transmission into gear or flips the truck's ignition switch next to the hand brake. In other words, the vehicle has mechanisms to prevent the truck from moving accidentally. Licensee testified that he told Trooper Geyer about this feature before he was asked to submit to the blood test.

4

The trial court rendered its findings of fact at the close of testimony. Crediting Trooper Geyer's version of events, the trial court denied Licensee's appeal. Licensee then appealed to this Court.

In its opinion filed pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), the trial court explained that, based on the facts and circumstances appearing at the time he requested Licensee's submission to the blood test, Trooper Geyer could have reasonably concluded that Licensee was in physical control of his truck while under the influence of alcohol. The trial court pointed to the following facts as recalled by Trooper Geyer:

> Trooper Geyer recalled that the engine on [Licensee's] truck was running, that [Licensee] was sitting in the driver's seat when [Trooper Geyer] approached the truck, and that there was an empty six pack and some beer bottles in the cup holder closest to the driver's seat of the truck. [Trooper Geyer] also recalled that [Licensee] smelled strongly of alcohol, slurred his speech, and exhibited glassy and bloodshot eyes. Moreover, [Licensee] performed poorly on three field sobriety tests including the walk and turn test, the one-leg stand, and the [horizontal gaze nystagmus] test. Finally, [Licensee] submitted to a [preliminary breath test] which indicated that his blood-alcohol content was 0.221, nearly triple the legal blood-alcohol content for driving a motor vehicle.

Trial Court Opinion, 5/3/2019, at 9. The trial court acknowledged that Licensee's detailed testimony about the vehicle's battery management feature "might, in hindsight, have quelled Trooper Geyer's suspicions regarding [Licensee's] operation of, or ability to move his vehicle." *Id.* at 10. However, Licensee did not establish that Trooper Geyer was aware of these details at the time of Licensee's arrest.

5

On appeal,[4] Licensee argues that the trial court erred in concluding that Trooper Geyer had reasonable grounds to believe that Licensee operated his vehicle while under the influence of alcohol. More specifically, Licensee argues that Trooper Geyer was aware that Licensee was a passive occupant in the vehicle and that the engine was simply idling because of the battery management feature *before* asking Licensee to submit to a chemical test.

To establish that a suspension of a licensee's operating privilege was proper under Section 1547(b)(1)(i) of the Vehicle Code, 75 Pa. C.S. §1547(b)(l)(i), the Department must prove at a statutory appeal hearing that the licensee:

> (1) was arrested for driving while under the influence by a police officer who had reasonable grounds to believe that the licensee was operating or was in actual physical control of the movement of the vehicle while under influence of alcohol; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was warned that a refusal would result in a license suspension.

*Banner v. Department of Transportation, Bureau of Driver Licensing*, 737 A.2d 1203, 1206 (Pa. 1999) (emphasis added). In the case *sub judice*, the first prong is the only one at issue.

The "reasonable grounds" necessary to support a license suspension is not the equivalent of probable cause required for a criminal prosecution. *Id.* at 1207. Instead, reasonable grounds "exist when a person in the position of the police officer, viewing the facts and circumstances as they appeared at the time, could have concluded that the motorist was operating the vehicle while under the influence of

---

[4] Our review determines whether the trial court's findings are supported by competent evidence, whether errors of law have been committed or whether the trial court's determinations demonstrate a manifest abuse of discretion. *Finnegan v. Department of Transportation, Bureau of Driver Licensing*, 844 A.2d 645, 647 n.3 (Pa. Cmwlth. 2004).

intoxicating liquor." *Id.* Whether a person was in "actual physical control" of a vehicle depends on "the totality of the circumstances, including the location of the vehicle, whether the engine was running and whether there was other evidence indicating that the motorist had driven the vehicle at some point prior to the arrival of the police." *Id.* Whether reasonable grounds exist is a question of law reviewable by this Court on a case-by-case basis. *Id.*

In determining whether the officer had reasonable grounds to make an arrest, a court must examine the totality of the evidence. *Marone v. Department of Transportation, Bureau of Driver Licensing*, 990 A.2d 1187, 1190 (Pa. Cmwlth. 2010). "Once the trial court accepts as credible an officer's testimony regarding observations of the licensee, it cannot substitute its judgment as to what inferences should be drawn from the circumstances." *Schlag v. Department of Transportation, Bureau of Driver Licensing*, 963 A.2d 598, 603 (Pa. Cmwlth. 2009). *See also Helt v. Department of Transportation, Bureau of Driver Licensing*, 856 A.2d 263, 266 (Pa. Cmwlth. 2004) (holding that trial court "erred in substituting its judgment as to what inference should be drawn from the circumstances the officer observed; the test is whether the officer's conclusion was reasonable as a matter of law, not whether common pleas might have concluded otherwise had he stood in the officer's shoes").

Here, the trial court credited Trooper Geyer's testimony about his observations on the night of Licensee's arrest. Trooper Geyer's account supports the trial court's determination that a person in his position could have reasonably concluded that Licensee had operated the vehicle or was in actual physical control of the movement of the vehicle while under the influence of alcohol. Trooper Geyer testified that Licensee was sitting in the driver's seat, that the vehicle's engine was running and that there were empty beer cans and bottles in the vehicle. Trooper

Geyer recalled that Licensee displayed signs of intoxication and performed poorly on three field sobriety tests. Licensee also submitted to a preliminary breath test which indicated that his blood-alcohol content was 0.221, almost triple the legal blood alcohol content for driving a motor vehicle. Considering the totality of the circumstances described by Trooper Geyer, we hold that the trial court did not err in concluding that he had reasonable grounds to believe that Licensee operated or controlled the movement of his vehicle while impaired.[5]

We reject Licensee's argument that Trooper Geyer was aware that the vehicle "was idling due to an automatic battery management system and that [Licensee] was a passive occupant in the vehicle." Licensee Brief at 4. Licensee contends that the vehicle could not have been moved due to various safety features that would have turned the engine off had Licensee attempted to move it. Licensee further asserts that Trooper Geyer knew about the auto start feature before he asked Licensee to consent to a blood draw.

We agree with the trial court that Licensee's argument fails because he did not prove that Trooper Geyer had knowledge of the truck's operational features at the time of Licensee's arrest. Indeed, when asked whether Licensee advised him of the battery management feature, Trooper Geyer testified:

---

[5] Our holding is in line with this Court's precedent. *See, e.g.*, *Walkden v. Department of Transportation, Bureau of Driver Licensing*, 103 A.3d 432 (Pa. Cmwlth. 2014) (reasonable grounds to believe licensee was in actual physical control of vehicle where officer observed an odor of alcohol coming from licensee's vehicle, an open container of alcohol in the vehicle and licensee failed field sobriety tests); *Gammer v. Department of Transportation, Bureau of Driver Licensing*, 995 A.2d 380 (Pa. Cmwlth. 2010) (explaining that "[g]enerally, the motorist's presence in the driver's seat of the vehicle with the engine on has been deemed sufficient to satisfy the reasonable grounds test"); *Department of Transportation, Bureau of Traffic Safety v. Farner*, 494 A.2d 513 (Pa. Cmwlth. 1985) (licensee was in actual physical control of the vehicle when he was found behind the wheel of the truck with the engine started and brake lights activated, but had left transmission in "park" and did not cause the vehicle to move).

8

[Trooper Geyer:] I do not recall great detail about this auto stop-start feature. This is something that's kind of been researched after the fact.

[Licensee's Attorney:] But did he advise you it had an auto start feature?

[Trooper Geyer:] To the best of my knowledge, I can testify that he did say that the keys weren't in the ignition. But I don't recall as far as the auto stop and start feature.

N.T. 18-19; R.R. 36-37. Licensee testified that he informed Trooper Geyer about the battery management feature, but the trial court did not find this testimony to be credible. Instead, he credited Trooper Geyer's testimony that he did not recall being informed of the "auto stop and start feature." License asks this Court to revisit the trial court's credibility determinations, but we cannot do this. *See Hasson v. Department of Transportation, Bureau of Driver Licensing*, 866 A.2d 1181, 1186 (Pa. Cmwlth. 2005) (assessment of credibility of witnesses and weight assigned to evidence is solely within province of factfinder).

Accordingly, the order of the trial court is affirmed.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Clint R. Tucker,                :
          Appellant      :
                        :
        v.             :   No. 221 C.D. 2019
                        :
Commonwealth of Pennsylvania,  :
Department of Transportation,    :
Bureau of Driver Licensing       :

## **O R D E R**

AND NOW, this 21st day of November, 2019, the order of the Court of Common Pleas of Dauphin County dated January 31, 2019, in the above-captioned matter is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge