COMMONWEALTH of Pennsylvania,
Appellee,

v.

Karen SMITH, Appellant.

Superior Court of Pennsylvania.

Argued May 29, 2003.

Filed Aug. 19, 2003.

 

Arthur S. Cohen, Hollidaysburg, for appellant.

Brandi J. Hauck, Asst. Dist. Atty., Hollidaysburg, for Com., appellee.

BEFORE: ORIE MELVIN, LALLY-GREEN and BENDER, JJ.

OPINION BY ORIE MELVIN, J.:

¶ 1 Appellant, Karen Smith, appeals from the judgment of sentence of 48 hours to 18 months' incarceration imposed following her conviction of driving under the influence (DUI) and related summary offense.[1] Appellant claims she established the affirmative defense of "involuntary intoxication" thereby negating the state of mind necessary to support a conviction of DUI. After review, we affirm.

¶ 2 The facts and procedural history of this matter may be summarized as follows. On March 29, 2002, Officer James E. Ott, of the Greenfield Township Police Department, observed Appellant driving a Ford truck on State Route 101 in Greenfield Township, Blair County, Pennsylvania. Officer Ott observed Appellant's vehicle drift completely into the oncoming lane and proceed to travel in the lane for oncoming traffic for one tenth of a mile until he activated his emergency lights. Appellant then pulled her vehicle to the side of the road, leaving a large portion of the vehicle protruding into the roadway, even though there was sufficient space to park the vehicle totally off of the roadway. Upon making contact with the Appellant, Officer Ott observed that her eyes were glassy and bloodshot and she emanated a strong odor of alcohol. When asked to exit her vehicle, Appellant stumbled and staggered numerous times. Appellant admitted to consuming beer earlier in the evening.

¶ 3 Officer Ott administered three field sobriety tests, all of which Appellant failed. Appellant was placed under arrest for DUI and transported to the hospital for a blood

---

1. 75 P.S. §§ 3731(a)(1) and 3714, respectively.

alcohol test, which she refused. On September 24, 2002, a bench trial was held. On direct examination, Appellant testified that she consumed alcohol while wearing a prescribed "duragesic" patch for pain. She testified that she did not realize that the patch would heighten the effects of alcohol. Appellant admitted that she did not read the directions or warnings for the patch. Moreover, Appellant offered no expert testimony whatsoever to support her allegation that the patch heightened the effects of the alcohol she consumed. The Honorable Thomas J. Peoples, Jr. found Appellant guilty and imposed sentence on October 17, 2002. Appellant filed a post sentence motion that was denied. This timely appeal followed.

¶ 4 Appellant's sole question on appeal reads as follows:

I. IS THE DEFENSE OF INVOLUNTARY INTOXICATION OR INVOLUNTARY DRUGGED CONDITION A DEFENSE COGNIZABLE IN PENNSYLVANIA?

Appellant's brief, at 7.

¶ 5 "In passing upon a motion in arrest of judgment, all of the testimony which has been admitted into evidence must be evaluated. This evidence is viewed in the light most favorable to the Commonwealth, and the Commonwealth is entitled to the benefit of all favorable inferences which may be drawn from the evidence." *Commonwealth v. Groff*, 378 Pa.Super. 353, 548 A.2d 1237, 1242 (1988) (citing *Commonwealth v. Meadows*, 471 Pa. 201, 369 A.2d 1266 (1977)). "The latitude of the trial judge in passing upon a nonjury verdict is no greater than the authority of a trial judge to set aside a jury verdict." *Commonwealth v. Driver*, 343 Pa.Super. 13, 493 A.2d 778, 779 (1985).

¶ 6 Initially, we note that Appellant was convicted of driving while under the influence of alcohol to a degree that rendered her incapable of safe driving. 75 Pa.C.S.A. § 3731(a)(1).

In order to prove a violation of this section, the Commonwealth must show: (1) that the defendant was the operator of a motor vehicle and (2) that while operating the vehicle, the defendant was under the influence of alcohol to such a degree as to render him or her incapable of safe driving. To establish the second element, it must be shown that alcohol has substantially impaired the normal mental and physical faculties required to safely operate the vehicle. Substantial impairment, in this context, means a diminution or enfeeblement in the ability to exercise judgment, to deliberate or to react prudently to changing circumstances and conditions. Evidence that the driver was not in control of himself, such as failing to pass a field sobriety test, may establish that the driver was under the influence of alcohol to a degree which rendered him incapable of safe driving, notwithstanding the absence of evidence of erratic or unsafe driving.

*Commonwealth v. Palmer*, 751 A.2d 223, 228 (Pa.Super.2000) (citations and footnote omitted).

¶ 7 Appellant asserts that involuntary intoxication is a cognizable affirmative defense in a DUI prosecution. Specifically, she claims that "[i]n the pharmaceutical age, the labeling of drugs places on the physician in Pennsylvania, the duty to warn the patient of the side effects of drugs. When labeling is not on bold print but on minute instructions in tiny print inside of a box, it is not the consumer who is expected to be aware of the consequences, but the physician. Where testimony is offered, unrebutted, nor challenged, that the user was unaware of the polypharmacology of the drug a cognizable

defense should be recognized in Pennsylvania." Appellant's brief, at 9. In effect, Appellant urges this Court to find that she was not criminally culpable for her conduct because she was unaware that the newly increased strength of the prescribed duragesic patch she was wearing would heighten the effects of the alcohol she voluntarily ingested. We are not persuaded.

¶ 8 Pennsylvania like many other jurisdictions, either by statute or caselaw, specifically limits the availability of a voluntary intoxication defense but does not specify whether an involuntary intoxication defense is available. See 18 Pa.C.S.A. § 308 (stating that evidence of voluntary intoxication is admissible where it is relevant "to reduce murder from a higher to a lower degree of murder."). In *Commonwealth v. Collins,* 810 A.2d 698, 700 (Pa.Super.2002), we recently noted that "the issue of whether involuntary intoxication is a defense to a DUI charge is unclear in Pennsylvania. See Committee Note, PA. S.S.J.I. Crim. 8.308(c) (stating that 'the existence and scope of the defense of involuntary intoxication is not yet fully established in Pennsylvania law.'); see also *Commonwealth v. Griscom,* 411 Pa.Super. 49, 600 A.2d 996, 997 (Pa.Super.1991) (concluding that the Pennsylvania appellate courts have not determined involuntary intoxication to be a viable defense against a DUI charge)." Moreover, in the context of a DUI prosecution, assuming the defense applies, we have held that the defendant has the burden of proving the affirmative defense of involuntary intoxication by a preponderance of the evidence. *Collins, supra.*

■ ¶ 9 Generally speaking, many of the other jurisdictions that permit an accused to be completely relieved of criminal responsibility based on involuntary intoxication do so premised upon the notion that he or she was temporarily rendered legally insane at the time he or she committed the offense. The defense of involuntary intoxication has been recognized in other jurisdictions in four types of situations: (1) where the intoxication was caused by the fault of another (i.e., through force, duress, fraud, or contrivance); (2) where the intoxication was caused by an innocent mistake on the part of the defendant (i.e., defendant took hallucinogenic pill in reasonable belief it was aspirin or lawful tranquilizer); (3) where a defendant unknowingly suffers from a physiological or psychological condition that renders him abnormally susceptible to a legal intoxicant (sometimes referred to as pathological intoxication); and (4) where unexpected intoxication results from a medically prescribed drug. Phillip E. Hassman, Annotation, *When Intoxication Deemed Involuntary so as to Constitute a Defense to Criminal Charge,* 73 A.L.R.3d 195 at § 2[a] (1976) (footnotes omitted).[2] These widely varying circumstances make it difficult to formulate a comprehensive definition of the defense; nonetheless, it would appear that a key component is lack of culpability on the part of the defendant in causing the intoxication.

¶ 10 Instantly, Appellant's argument is most similar to the situation described

---

2. Like the insanity defense, the defendant is excused from criminality because intoxication affects the ability to distinguish between right and wrong. W. Lafave & A. Scott, *Handbook on Crim. Law,* § 45 at 342 (1972). Thus, the mental state of an involuntarily intoxicated defendant is measured by the test of legal insanity. *See State v. Gardner,* 230 Wis.2d 32, 601 N.W.2d 670 (Ct.App.1999); *State v. Lucas,* 368 N.W.2d 124 (Iowa 1985); *City of Minneapolis v. Altimus,* 306 Minn. 462, 238 N.W.2d 851 (1976) (*en banc* ); *State v. Mriglot,* 15 Wash.App. 446, 550 P.2d 17 (1976), *affirmed,* 88 Wash.2d 573, 564 P.2d 784 (1977) (*en banc* ).

above in type number four. This type is premised upon the notion that "because a patient is entitled to assume that an intoxicating dose would not be prescribed or administered by a physician, where intoxication results from medicine which has been prescribed (and taken as prescribed) or administered by a physician, such intoxication is generally considered involuntary." Hassman, *supra.* Significantly, Appellant's argument differs from a pure type four involuntary intoxication defense in that she does not claim that the patch alone caused an unknowing and unexpected intoxicating effect. Rather, she claims that a higher dose of the patch combined with her voluntary ingestion of an allegedly moderate amount of alcohol caused an unexpected intoxication. It would seem, however, that her intoxication was "self-induced" as defined by the Model Penal Code.[3] Clearly, she "knowingly introduce[d]" a substance—alcohol—"the tendency of which to cause intoxication" she "ought to [have known]." Model Penal Code § 2.08(5)(b). In fact, this Court and our Supreme Court have previously rejected similar arguments in *Commonwealth v. Todaro,* 301 Pa.Super. 1, 446 A.2d 1305 (1982) and *Commonwealth v. Hicks,* 483 Pa. 305, 396 A.2d 1183 (1979).

¶ 11 In *Todaro,* the defendant was charged with involuntary manslaughter, recklessly endangering another person, and driving under the influence. This Court held that an instruction on involuntary intoxication was not required where the defendant inadvertently mixed alcoholic beverages with prescribed medication because there was no evidence to support a finding that defendant's intoxication was not voluntary. In *Hicks,* prior to the victim's murder the defendant had consumed a large quantity of alcohol and an amphetamine based diet pill. Defendant asserted that the record did not establish that he was sane so as to be criminally responsible for his conduct. He argued that his mental state was involuntarily induced from a mixture of the prescribed medication and alcohol because he was not warned of the possible effect of such combination. On appeal our Supreme Court held that the trial court properly weighed the evidence and found that defendant's behavior resulted from the voluntary ingestion of alcohol and not mental disease. The Court further noted that "[e]ven accepting the remote possibility of the existence of a pathological disorder, it was at best a passive condition triggered by the ingestion of alcohol. In either event [defendant] was not entitled to escape the responsibility for his conduct under the *M'Naghten* Rule." *Hicks,* at 311–312, 396 A.2d at 1186.

■ ¶ 12 Thus, it would appear that Pennsylvania law is consonant with the Model Penal Code's definition and would not characterize intoxication produced by the voluntary consumption of a prescription drug and alcohol as "involuntary" even if that consumption was without knowledge of a synergistic effect. Here, as in *Todaro* the evidence merely established that Appellant drank alcohol without regard to the effects of its combination with medication she was taking. Thus, even assuming the proffered defense is viable, these facts alone cannot establish involuntary intoxication. *See also, e.g., State v. Gardner,* 230 Wis.2d 32, 601 N.W.2d 670 (Ct.App.

---

3. The Model Penal Code uses the term "self-induced" intoxication, rather than "voluntary" intoxication, and defines that term to mean, intoxication caused by substances which the actor knowingly introduces into his body, the tendency of which to cause intoxication he knows or ought to know, unless he introduces them pursuant to medical advice or under such circumstances as would afford a defense to a charge of crime. Model Penal Code § 2.08(5)(b).

1999) (finding involuntary intoxication defense is not available in cases where a defendant knowingly takes more than the prescribed dosage, mixes a prescription medication with alcohol or other controlled substances, or voluntarily undertakes an activity incompatible with the drug's side effects).

 ¶ 13 Moreover, upon our careful review of the facts of this case even if we were to assume that such a defense is cognizable under Appellant's theory, she still cannot show that the trial court erred in rejecting this defense because she has failed to establish the necessary factual foundation to support her claimed defense. To absolve Appellant of criminal behavior by the complete defense of involuntary intoxication, she had the burden to show such intoxication by a preponderance of the evidence. *Collins, supra.* If this defense is to be relied upon, Appellant must show that the combination is capable of causing the extreme intoxication which is alleged. The trial court cannot take judicial notice of this fact. Thus, at a minimum it will be necessary to present expert witnesses to establish this effect. Here, the only evidence of record is Appellant's self-serving statements that she had not read any of the labeling and was not told by her doctor of any possible side effects and thus was unaware of the alleged heightened effect of the patch when combined with alcohol consumption. Appellant did not present her physician or any other medical expert to establish that an increased inebriating effect was even possible. It follows that Appellant has not come close to putting the integrity of the conviction into question. Because Appellant was unable to establish the factual foundation for her proffered defense, it does not bear upon the sufficiency of the evidence in the case, and the trial court

properly denied Appellant's motion in arrest of judgment.

¶ 14 Judgment of sentence affirmed.