J-S33011-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| OTTO A. BROWN, | |
| Appellant | No. 1264 MDA 2016 |

Appeal from the Judgment of Sentence Entered April 13, 2016
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0001548-2015

BEFORE:  BENDER, P.J.E., OTT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:               **FILED JUNE 16, 2017**

Appellant, Otto A. Brown, appeals from the judgment of sentence imposed after a jury convicted him of one count of driving under the influence of alcohol (DUI), pursuant to the 'general impairment' provision set forth in 75 Pa.C.S. § 3802(a)(1).  Appellant challenges the sufficiency of the evidence to sustain his conviction, and he also argues that he is entitled to a new trial due to prosecutorial misconduct.  After careful review, we reverse Appellant's judgment of sentence and order him discharged.

Briefly, Appellant was arrested and charged with DUI on November 29, 2014, following a traffic stop of his vehicle.  He proceeded to a jury trial on February 10, 2016, and, at the close thereof, the jury convicted him of the

_____

[*] Retired Senior Judge assigned to the Superior Court.

DUI charge. Appellant was subsequently sentenced on April 13, 2016, to a term of 1 to 4 years' incarceration, which included a mandatory minimum sentence under 75 Pa.C.S. § 3804(c)(3), based on Appellant's failure to submit to chemical blood testing.

On April 22, 2016, Appellant filed a timely post-sentence motion challenging the weight of the evidence to support the jury's verdict. The court scheduled oral argument on Appellant's post-sentence motion for July 15, 2016. However, on July 1, 2016, Appellant filed a supplemental post-sentence motion, adding a claim that his mandatory sentence under section 3804(c)(3) is illegal in light of the United States Supreme Court's decision in *Birchfield v. North Dakota*, 136 S.Ct. 2160 (2016) (holding that a state may not criminalize a motorist's refusal to comply with a demand to submit to blood testing). On July 19, 2016, the trial court issued an order denying Appellant's weight-of-the-evidence claim, but granting his challenge to the legality of his sentence under *Birchfield*. The court scheduled a resentencing hearing for August 31, 2016.

However, before the resentencing hearing, Appellant filed a timely notice of appeal with this Court on July 26, 2016.[1] Thereafter, the court

---

[1] Nevertheless, the trial court resentenced Appellant on August 31, 2016, to a term of incarceration of 6 to 23 months' incarceration. In light of our disposition herein, we need not assess whether the trial court had the inherent authority to correct Appellant's illegal sentence, even though he had previously filed a notice of appeal. *See Commonwealth v. Holmes*, 933 A.2d 57, 65 (Pa. 2007) (concluding that, while a trial court typically
*(Footnote Continued Next Page)*

ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and he timely complied.   Herein, Appellant presents two issues for our review:

> 1. Was the evidence at trial insufficient to prove beyond a reasonable doubt that [] Appellant was guilty of [DUI] where the Commonwealth failed to prove that Appellant was incapable of safe driving?
>
> 2.   Whether the trial court erred in denying Appellant's motion for a mistrial where the [Commonwealth's] statements in closing were inflammatory and included argument about facts not in evidence[,] creating an unavoidable effect of prejudice to the jurors by forming in their minds a fixed bias and hostility to [Appellant], thus impeding their ability to weigh the evidence objectively and render a true verdict?

Appellant's Brief at 6 (emphasis and unnecessary capitalization omitted).

To begin, we note our standard of review of a challenge to the sufficiency of the evidence:

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. **Commonwealth v. Moreno***, 14 A.3d 133 (Pa. Super. 2011).   Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. **Commonwealth v. Hartzell***, 988 A.2d 141 (Pa. Super. 2009).   The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt. **Moreno, supra** at 136.

**Commonwealth v. Koch**, 39 A.3d 996, 1001 (Pa. Super. 2011).

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯⎯

loses jurisdiction to correct a sentencing order after a notice of appeal has been filed, the court retains "the inherent power … to correct obvious and patent mistakes in its orders, judgments and decrees").

- 3 -

In this case, Appellant challenges the sufficiency of the evidence to sustain his conviction of DUI, general impairment, which is defined as follows:

**(a) General impairment.--**

(1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(a)(1). Additionally, our Court has explained that,

[i]n order to prove a violation of this section, the Commonwealth must show: (1) that the defendant was the operator of a motor vehicle and (2) that while operating the vehicle, the defendant was under the influence of alcohol to such a degree as to render him or her incapable of safe driving. To establish the second element, it must be shown that alcohol has substantially impaired the normal mental and physical faculties required to safely operate the vehicle. Substantial impairment, in this context, means a diminution or enfeeblement in the ability to exercise judgment, to deliberate or to react prudently to changing circumstances and conditions. Evidence that the driver was not in control of himself, such as failing to pass a field sobriety test, may establish that the driver was under the influence of alcohol to a degree which rendered him incapable of safe driving, notwithstanding the absence of evidence of erratic or unsafe driving.

***Commonwealth v. Smith***, 831 A.2d 636, 638 (Pa. Super. 2003) (quoting

***Commonwealth v. Palmer***, 751 A.2d 223, 228 (Pa. Super. 2000) (citations

and footnote omitted)).

At Appellant's trial, the Commonwealth presented the testimony of one witness, Lower Swatara Township Police Officer Patrick Ribec. Officer Ribec

testified that on November 29, 2014, he "was on the 11:00 p.m. to 7:00 a.m. shift" and was patrolling in a marked police car. N.T. Trial, 2/10/16, at 36, 40. At approximately 2:20 a.m., Officer Ribec "noticed a blue Honda Civic[,]" which was driven by Appellant. *Id.* at 41, 45-46. Appellant's vehicle attracted the officer's attention because Appellant had "merge[d] onto the on-ramp to I-283" at the "last second possible[,]" and had "also failed to signal…." *Id.* at 41. Officer Ribec began following Appellant's car, and observed him fail to signal again when he merged onto I-283. *Id.* at 44. The officer also "paced [the vehicle as] going ten miles under the speed limit…." *Id.* Based on these traffic violations, the officer decided to stop Appellant's vehicle. *Id.* Officer Ribec testified that at the time he initiated the stop of Appellant's vehicle, he had no "opinion as to [Appellant's] condition[,]" but stopped him solely for the traffic violations. *Id.* at 45.

Officer Ribec testified that Appellant pulled his vehicle "over in a safe and timely manner." *Id.* When the officer approached the car, he saw that there was a female passenger, but he did not "observe her condition as far as whether she was impaired or not" because it "was a basic, simple traffic stop." *Id.* at 46. The officer testified that Appellant was cooperative, coherent, and explained to the officer that he failed to signal "because his passenger gave him … last-minute directions[.]" *Id.* at 86. Officer Ribec asked for Appellant's information, and Appellant had no trouble locating the documents, and he did not fumble with them when handing them to the officer. *Id.* at 87. The officer also testified that Appellant's speech was not

- 5 -

slurred. ***Id.*** However, Officer Ribec did "smell an odor commonly associated with an alcoholic beverage." ***Id.*** at 47. Accordingly, Officer Ribec asked Appellant if he had been drinking, and Appellant told the officer he "had just one beer." ***Id.*** at 48. The officer then asked Appellant to submit to field sobriety tests, and Appellant agreed. ***Id.*** at 48. When Appellant exited the vehicle, the officer was able to determine that the smell of alcohol was "coming from the vehicle[,]" rather than Appellant's person, yet the officer still did not speak to the passenger to determine if she was intoxicated. ***Id.*** at 87-88.

Officer Ribec instructed Appellant to walk to the back of the vehicle for the field sobriety tests. ***Id.*** at 48. The officer noted that, "on his way back from his vehicle, [Appellant] did sway, and he was unsteady on his feet." ***Id.*** at 50. The officer first conducted "the walk and turn" test, and he explained Appellant's performance on that test as follows:

> [Officer Ribec]: … While in the instructional position, he got out of the instructional position. He lost his balance and then remained standing with his feet together for the remainder of my demonstration. Once he started the test -- his 9 heel-to-toe steps forward -- he ended up taking 12 steps. He missed heel to toe on every step, except number 3, and that was his first 9 heel-to-toe steps. That's what I observed.
>
> …
>
> [Appellant's performance] wasn't good.
>
> …
>
> [Appellant then] turned around incorrectly. When I demonstrated, I kept my front foot on the ground and took a series of small steps and went backwards. He used both feet to

turn around, which is incorrect. After turning around, he was to take nine steps heel to toe back in a straight line. He walked toward me and stopped. And I asked him why he did this, and he said because he was done with the test. And my instructions were clear, nine steps forward, turn around, nine steps back.

*Id.* at 56, 57-58.

Officer Ribec also testified that for the walk and turn test, the "general rule" is that if there are three or more "clues" of intoxication during the test, the person is "possibly impaired." *Id.* at 90. In this case, Appellant "showed five" clues. *Id.* at 90. However, the officer testified that even after Appellant's poor performance on this first test, he had not "exactly" formed an opinion regarding Appellant's condition, although he "had an idea where this was leading." *Id.* at 58.

Officer Ribec next asked Appellant to perform the one-legged stand. During that test, Appellant swayed while standing on one foot, which the officer testified was one of "four clues" indicating intoxication. *Id.* at 60. Appellant also put his foot down after ten counts, and then "just started to stare" at the officer, despite being previously instructed "to continue counting until [the officer] told [him he] was done." *Id.* Officer Ribec testified that there are "four possible clues" of intoxication in the one-legged stand test, and that Appellant "showed two." *Id.* at 91.

From all these facts and observations, Officer Ribec "had a suspicion that [Appellant] was driving under the influence of alcohol." *Id.* at 61. Accordingly, the officer placed Appellant under arrest and "transported him to the Dauphin County Judicial Center for a blood draw." *Id.* at 59. While

Appellant initially consented to that blood draw, after the nurse at the judicial center twice could not find a vein in Appellant's arm, he refused to allow further attempts to draw his blood. *Id.* at 65-66, 67.

Appellant contends that this evidence failed to prove, beyond a reasonable doubt, that he was incapable of safely operating his vehicle. We must agree. Officer Ribec did not observe Appellant's driving erratically.[2] We recognize that "[e]vidence of erratic driving is not a necessary precursor to a finding of guilt under the relevant statute." ***Commonwealth v. Mobley***, 14 A.3d 887, 890 (Pa. Super. 2011). Rather, "[t]he Commonwealth may prove that a person is incapable of driving through the failure of a field sobriety test." *Id.* (citations omitted). In ***Mobley***, we found the evidence sufficient to prove Mobley was incapable of safely driving his vehicle, even though he was not driving erratically before being stopped by police, where Mobley failed four field sobriety tests, was disoriented, exhibited slow speech, and refused to submit to a chemical blood test. *Id.* at 889. Additionally, an odor of alcohol permeated from Mobley's person when he exited his vehicle. *Id.*

Likewise, we found the evidence presented in ***Smith*** sufficient to sustain a conviction of DUI, general impairment. There, the officer observed Smith's driving erratically, drifting her vehicle into the oncoming lane of

_____

[2] Indeed, the officer noted that Appellant was committing the *inherently safer* act of driving *slower* than the posted speed limit.

travel and leaving a large portion of her vehicle protruding into the roadway when she pulled over. *Smith*, 831 A.2d at 637. The officer also noticed that Smith's eyes were glassy and blood shot, she emanated a strong odor of alcohol, and she "stumbled and staggered numerous times" when she exited the vehicle. *Id.* Additionally, Smith admitted she had been drinking beer earlier that evening, she failed three field sobriety tests, and she refused chemical blood testing. *Id.*

In contrast to the driver's in *Mobley* and *Smith*, here, Officer Ribec testified that Appellant was coherent, his speech was not slurred, he did not fumble with his documents, and the officer determined the odor of alcohol he smelled was coming from the car, not from Appellant's person. Appellant also consented to a blood draw, only refusing after a nurse twice failed to locate a vein from which to obtain the blood sample. Additionally, while Appellant admitted that he drank *one* beer that evening, there was no evidence regarding when he had consumed that beverage.

Appellant also consented to field sobriety tests, and only two were conducted. While Officer Ribec explained that he observed several 'clues' of 'possible intoxication' during Appellant's performance, he never testified that Appellant failed the tests, nor explained what type of performance would qualify as a failure. Indeed, in regard to the heel-to-toe test (on which Appellant's performance was arguably the worst), Officer Ribec stated only that Appellant's performance "wasn't good." N.T. Trial at 56. Additionally, the officer admitted that he was not able to fully form an opinion regarding

Appellant's 'condition' based on that first test. *Id.* at 58. Thus, the officer conducted a second test, on which Appellant showed two out of four clues of possible impairment. Officer Ribec never clarified if showing two clues constituted a failure of that test.

Officer Ribec also never testified that Appellant's overall performance on the field sobriety tests led him to conclude that Appellant was incapable of safely driving a vehicle; rather, the officer stated only that he "had a suspicion that [Appellant] was driving under the influence of alcohol." *Id.* at 61. Later, the officer testified that from his observations of Appellant, he "believe[d that Appellant] was above the legal limit." N.T. Trial at 95. However, Appellant was not charged under the 'legal limit' portion of the DUI statute, *i.e.*, 75 Pa.C.S. § 3802(a)(2); he was charged under the general impairment provision of section 3802, which requires evidence that Appellant was impaired to the point that he could not safely operate his car. From the evidence presented at trial, we simply cannot conclude that the Commonwealth established this element beyond a reasonable doubt. Accordingly, we reverse Appellant's conviction and order that he be discharged immediately.

In light of this disposition we need not address Appellant's argument that he is entitled to a new trial on the basis of prosecutorial misconduct. However, we are compelled to note (for the trial court and prosecutor in this case) that we *would* grant Appellant a new trial on that issue, if we were not already reversing on sufficiency grounds. Briefly, the prosecutor referred to

Officer Ribec as a "hero" in his opening statement, and then in closing, the prosecutor declared: "I told you at the beginning of the trial that this man [Officer Ribec] was a hero because of what he prevented. I don't know what would have happened if he had not stopped [Appellant]. I don't know." N.T. Trial at 100. Defense counsel immediately objected and moved for a mistrial on the basis that the prosecutor had improperly suggested "that had [Appellant] not been pulled over, he would have killed somebody." *Id.* at 102. Defense counsel argued that the prosecutor's statement was not supported by the evidence, and that it was extremely prejudicial, because "[t]here was no testimony that anyone else was on the road. There was no testimony that [Appellant] was driving erratically. There's no testimony that backs up what he was saying. And it goes beyond argument." *Id.* at 103. Ultimately, the trial court denied defense counsel's motion for a mistrial, but it provided a curative instruction directing the jury to disregard the prosecutor's at-issue comments.

While we do not definitively decide this issue in light of our disposition, *supra*, it appears to this Court that a curative instruction could not have cured the significant prejudice caused to Appellant by the prosecutor's intemperate remarks. Casting Officer Ribec as a hero in this case - where the officer merely conducted a traffic stop of a completely compliant individual - was clearly an overstatement; but, to add the suggestion that Appellant would have hurt or killed someone (or himself) if not for the officer's pulling him over crossed the line into prosecutorial misconduct.

Such comments could only form in the juror's "minds [a] fixed bias and hostility towards [Appellant] so as to hinder an objective weighing of the evidence and impede the rendering of a true verdict." ***Commonwealth v. Chmiel***, 777 A.2d 459, 464 (Pa. Super. 2001) (citations omitted). Moreover, we would disagree with the Commonwealth that the curative instruction cured the prejudice suffered by Appellant. Therefore, we would grant Appellant a new trial on this issue, if we were not already reversing his conviction on sufficiency grounds.

Judgment of sentence reversed. Appellant discharged immediately. Jurisdiction relinquished.

Judge Ott joins this memorandum.

Judge Strassburger concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/16/2017