J-S24023-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MARK ANTHONY MILLER | |
| Appellant | No. 3502 EDA 2019 |

Appeal from the Judgment of Sentence entered November 15, 2019
In the Court of Common Pleas of Carbon County
Criminal Division at No: CP-13-CR-0001459-2016

BEFORE:  BENDER, P.J.E., STABILE, J., and STRASSBURGER, J.[*]

MEMORANDUM BY STABILE, J.:                    Filed: August 20, 2020

Appellant, Mark Anthony Miller, appeals from the judgment of sentence entered on November 15, 2019 in the Court of Common Pleas of Carbon County following his convictions of driving under the influence ("DUI")—general impairment and careless driving.[1]  Appellant challenges the sufficiency of evidence supporting his DUI conviction and contends the trial court abused its discretion in permitting the arresting officer to testify about admissions made by Appellant.  Upon review, we affirm.

Appellant was arrested following an intersection accident that occurred shortly after 5 p.m. on February 28, 2016 in Banks Township, Carbon County,

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S.A. §§ 3802(a)(1) and 3714(a), respectively.

in which Appellant's white Infinity sedan collided with a blue Subaru Outback operated by Caitlyn Kehley ("Kehley"). On June 2, 2016, Appellant was charged with various offenses, including the two of which he was ultimately convicted following an August 9, 2019 bench trial. On November 15, 2019, the trial court sentenced Appellant to 30 days to six months in the Carbon County Correctional Facility for DUI and imposed a $25 fine for careless driving. Appellant did not file post-sentence motions but did file a timely appeal on November 26, 2019. Both Appellant and the trial court complied with Pa.R.A.P. 1925.[2]

Appellant asks us to consider two issues in this appeal:

1. Whether the evidence was insufficient as a matter of law to establish the Appellant's guilt beyond a reasonable doubt on the charge of driving under the influence—general impairment.

2. Whether the trial court abused its discretion in permitting into evidence statements from a witness for the Commonwealth regarding statements made by the Appellant at the time of the incident.

Appellant's Brief at 3.

In his first issue, Appellant challenges the sufficiency of evidence supporting his DUI conviction. As this Court explained in **Commonwealth v. Neysmith**, 192 A.3d 184 (Pa. Super. 2018):

Our standard of review is *de novo*, and our scope of review is plenary, because:

---

[2] We remind Appellant's counsel of the obligation to append a copy of the Rule 1925(b) statement to an appellant's brief. **See** Pa.R.A.P. 2111(a)(11), (d).

> a claim challenging the sufficiency of the evidence is a question of law. . . . When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Id.* at 189 (quoting **Commonwealth v. Widmer**, 744 A.2d 745, 751 (Pa. 2000)). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." **Widmer**, 744 A.2d at 751 (citation omitted).

With respect to DUI—general impairment, 75 Pa.C.S.A. § 3802(a)(1) directs that "[a]n individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle."

The testimony presented at Appellant's trial, viewed in the light most favorable to the Commonwealth as verdict winner reveals that neither Appellant nor Kehley has any recollection of the moment of impact between their cars. The Commonwealth presented testimony of eyewitnesses to the accident as well as video clips from a neighbor's surveillance camera and the testimony of Trooper Richard Mrak ("Mrak") of the Pennsylvania State Police. Based on our review of the trial testimony, we provide the following summary of the evidence.

The first witness called by the Commonwealth was Tammy Foland ("Foland"). Foland was driving through Banks Township on Tresckow Road, which turns into Oak Street, when Appellant pulled out in front of her and began pulling away. She noticed his car slowing but not stopping at the stop sign at the intersection of Oak and Chestnut Streets and saw it turn left onto Chestnut. Foland also turned left on Chestnut and then turned right onto Market Street where she again saw Appellant's car, several blocks ahead of her by this time.[3] She both saw and heard the "crash" when Appellant's car collided with Kehley's Subaru. Notes of Testimony ("N.T."), Trial, 8/9/19, at 5-12.

The Commonwealth next called Mrak. Mrak acknowledged he was not an expert accident reconstructionist but explained his accident investigation training and experience. *Id.* at 14-19.

Mrak testified that he received a call about an accident at the intersection of Market and Pine Streets in Banks Township. When he arrived, he observed the Infinity with front-end damage and the Subaru with passenger-side damage and a large debris field. Kehley already had been transported to the hospital, but Appellant was still at the scene being attended to by EMS personnel in an ambulance. When Mrak opened the door to the ambulance, he smelled a strong odor of alcohol and observed that Appellant's

---

[3] Foland noted she was observing the speed limit.

eyes were bloodshot. Appellant, whose speech was slurred and deliberate, acknowledged that he was the driver of the Infinity and stated he had consumed six to eight beers before driving his car that day. In light of Appellant's injuries and the treatment he was receiving, Mrak did not conduct field sobriety tests. *Id.* at 19-28.

After Appellant was taken from the scene, Mrak conducted a crash scene investigation. He observed there were no tire marks leading up to the point of impact. After the point of impact, Appellant's car left 26 feet of tire marks, including four feet of marks from "speed braking," meaning there was no attempt to slow the car prior to impact. He also noted that the large debris field indicated a high-speed collision. *Id.* at 30-33.

During Mrak's testimony, the Commonwealth introduced Mrak's photographs of the accident scene and played the video clips showing the moment of impact. *Id.* at 33-37; 40- 41. Mrak expressed his opinion that Appellant was driving impaired and was incapable of operating his vehicle safely due to alcohol consumption. *Id.* at 41-47. The trial court summarized the basis for Mrak's opinion as follows:

> [Mrak's] opinion was based on the totality of the circumstances: strong odor of alcohol in the ambulance where [Appellant] was getting medical attention, bloodshot eyes, slurred and deliberate speech, [Appellant's] admission that he drank 6-8 beers before driving, the fact that the evidence suggested a high speed collision (confirmed by the video), the distance traveled by [Appellant's] vehicle after impact, speed braking from [Appellant's] vehicle and the lack of tire marks before the point of impact.

Trial Court Opinion, 1/10/20, at 5 n.6.[4]

The Commonwealth next called Kehley. She explained that she was very familiar with the intersection where the accident occurred. Although at age 16 she was a relatively new driver, she had been through the intersection on a daily basis. She testified that she came up to the stop sign and then moved forward slowly to look for cross traffic that was obscured by parked cars. She saw a white car approximately four or five blocks away and believed she had sufficient time to drive through the intersection safely ahead of that car. She proceeded into the intersection where she was struck by Appellant's car. N.T., Trial, 8/9/19, at 73-76. She believes she misjudged the speed at which Appellant's vehicle was traveling and that she would have made it through the intersection safely if Appellant were not speeding. *Id.* at 79-80.

The Commonwealth's final witness was Michael Nagy ("Nagy"). Nagy testified that he was talking with a friend when he heard a vehicle coming up Market Street. He described the sound as "normal motor acceleration" and then engine noise he explained as "somebody laying on it." *Id.* at 83. He commented to his friend, "I don't know who this is or where he is going, but he is going in a hurry." *Id.* He then heard a "smash" and saw a car in the

---

[4] On cross-examination, Mrak acknowledged that he initially cited Kehley for failure to stop at a stop sign controlling her direction of travel. However, after observing videos of the accident, receiving BAC results (which were suppressed by the trial court), and completing his investigation, he withdrew the citation against Kehley and filed the charges against Appellant.

middle of the street and another car farther down the street, on his neighbor's steps. *Id.* He approached the cars and saw Appellant in the Infinity and Kehley in the Subaru. *Id.* at 84. By Nagy's testimony, the Commonwealth confirmed that Appellant was, in fact, operating the vehicle.

Appellant's only witness was a retired police officer who offered his expert opinion as an accident reconstructionist that the primary cause of the accident was Kehley's action in "proceeding [into the intersection] without clearance after the stop." *Id.* at 98. A contributing factor would be the speed at which Appellant was driving. *Id.* at 97. However, there was "nothing to indicate that alcohol or being under the influence contributed to the severity of the crash." *Id.* at 104.

Appellant did not testify. At the close of evidence, the trial court heard closing arguments and then took a recess to review Appellant's expert report, watch the video clips, and review its notes. "Based upon the testimony presented," the trial court found Appellant "guilty of both the driving under the influence and careless driving charges." *Id.* at 143.

To sustain a conviction under § 3802(a)(1), "the Commonwealth must show: (1) that the defendant was the operator of a motor vehicle and (2) that while operating the vehicle, the defendant was under the influence of alcohol to such a degree as to render him incapable of safe driving." *Commonwealth v. Smith*, 831 A.2d 636, 638 (Pa. Super. 2003) (quoting *Commonwealth v. Palmer*, 751 A.2d 223, 228 (Pa. Super. 2000)). As

noted, Nagy's testimony—even without Appellant's admission—established that Appellant was operating a motor vehicle. Therefore, the first element is satisfied.

As this Court explained in **Commonwealth v. Gause**, 164 A.3d 532 (Pa. Super. 2017) (*en banc*), in order to "establish the second element [of § 3802(a)(1)], the Commonwealth must show that alcohol has substantially impaired the normal and physical faculties required to safely operate the vehicle." **Id.** at 541 (quoting **Palmer**, 751 A.2d at 228). "Substantial impairment, in this context, means a diminution or enfeeblement in the ability to exercise judgment, to deliberate or to react prudently to changing circumstances and conditions." **Id.** (quoting **Palmer**, 751 A.2d at 228).

In its Rule 1925(a) opinion, the trial court looked to this Court's opinion in **Commonwealth v. Teems**, 74 A.3d 142 (Pa. Super. 2013), in which we considered the "type, quantum, and quality of evidence required to prove a general impairment violation under § 3802(a)(1)." Rule 1925(a) Opinion, 1/10/20, at 12 (quoting **Teems**, 74 A.3d at 145). In **Teems**, we in turn looked to **Commonwealth v. Segida**, 985 A.2d 871 (Pa. 2008), where our Supreme Court stated:

> Section 3802(a)(1), like its predecessor [statute], is a general provision and provides no specific restraint upon the Commonwealth in the manner in which it may prove that an accused operated a vehicle under the influence of alcohol to a degree which rendered him incapable of safe driving. . . . The types of evidence that the Commonwealth may proffer in a subsection 3802(a)(1) prosecution include but are not limited to, the following: the offender's actions and behavior, including

manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech.

*Teems*, 74 A.3d at 145 (quoting *Segida*, 985 A.2d at 879).

The trial court stated:

In this case, the evidence presented by the Commonwealth consisted of: 1) observations by a disinterested third party (Foland), the investigation of Mrak and his opinion on whether [Appellant] was under the influence of alcohol to such a degree that it rendered him incapable of driving safely, videos of the collision, the testimony of Kehley, and Nagy, a third party who witnessed the collision.

Rule 1925(a) Opinion, 1/10/20, at 13-14 (footnotes omitted). In footnotes, the trial court summarized Foland's observations as well as Mrak's investigation and opinion, consistent with our summary above, and included an excerpt from the trial testimony in which Mrak explained his conclusions. *Id.* at 13-14 n. 15 (quoting N.T., Trial, 8/9/19, at 42-44). The court stated:

[T]he court is tasked with determining what effect or role alcohol may have had on [Appellant's] ability to drive safely on the date in question. The court must consider what affect alcohol consumption had or did not have on such human actions as: judgment, concentration, comprehension, coordination, vision and hearing and reaction time. It is not unreasonable for a court in hearing and seeing the evidence presented by the Commonwealth that [Appellant's] consumption of alcohol: 1) reduced his ability to think clearly, reason and make smart decisions and exercise caution. . . ; 2) limited his ability to concentrate on multiple tasks . . .; 3) lessened his ability to comprehend things such as stop signs or a potentially dangerous driving situation . . .; 4) reduced coordination of fine motor skills . . . ; 5) lowered auditory or visualization skills and ability to judge distances . . .; and 6) reduced reaction times . . . due to alcohol consumption.

*Id.* at 15-16 (some capitalization omitted). "Based on the totality of the testimony and evidence presented by the Commonwealth and the reasonable inferences that can be drawn from that testimony," the trial court reiterated that the evidence was sufficient to sustain Appellant's conviction of DUI—general impairment. *Id.* at 16. Viewing the evidence in the light most favorable to the Commonwealth, as well as the reasonable inferences drawn therefrom, we find the evidence sufficient to support Appellant's DUI conviction. Appellant is not entitled to relief on his sufficiency claim.

In his second issue, Appellant argues trial court error for allowing Mrak to testify as to Appellant's statements while in the ambulance, claiming violation of the *corpus delicti* rule.

> The *corpus delicti* rule is an evidentiary one. On a challenge to a trial court's evidentiary ruling, our standard of review is one of deference.
>
> The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

*Commonwealth v. Hernandez*, 39 A.3d 406, 411 (Pa. Super. 2012) (quoting *Commonwealth v. Herb*, 852 A.2d 356, 363 (Pa. Super. 2004)).

> As we explained in *Hernandez*:
>
> The *corpus delicti* rule is designed to guard against the hasty and unguarded character which is often attached to confessions and admissions and the consequent danger of a conviction where no crime has in fact been committed. . . . The *corpus delicti* rule

places the burden on the prosecution to establish that a crime has actually occurred before a confession or admission of the accused connecting him to the crime can be admitted. The *corpus delicti* is literally the body of the crime; it consists of proof that a loss or injury has occurred as a result of the criminal conduct of someone. . . . The *corpus delicti* may be established by circumstantial evidence. Establishing the *corpus delicti* in Pennsylvania is a two-step process. The first step concerns the trial judge's admission of the accused's statements and the second step concerns the fact finder's consideration of those statements. In order for the statement to be admitted, the Commonwealth must prove the *corpus delicti* by a preponderance of the evidence. In order for the statement to be considered by the fact finder, the Commonwealth must establish the *corpus delicti* beyond a reasonable doubt.

*Id.* at 410-11 (quoting **Commonwealth v. Young**, 904 A.2d 947, 956 (Pa. Super. 2006) (additional citations and internal quotations omitted)).

Appellant asserts the trial court erred when it permitted Mrak to repeat Appellant's admission that he drank six to eight beers before driving. Quoting **Commonwealth v. Zugay**, 745 A.2d 639 (Pa. Super. 2000), the trial court recognized that "[b]efore introducing an extra judicial admission, the Commonwealth is not required to prove the existence of a crime beyond a reasonable doubt. Rather, it is enough for the Commonwealth to prove that the injury or loss is more consistent with a crime having been committed than not." Rule 1925(a) Opinion, 1/10/20, at 20 (quoting **Zugay**, 745 A.2d at 652).

As the Commonwealth observes, before Mrak testified, Foland testified as to Appellant's erratic driving, pulling out in front of her, failing to stop at a posted stop sign, and driving in excess of the speed limit in a very residential

area up until he crashed at an intersection blocks ahead of her. Commonwealth Brief at 7-8. Further, before offering alcohol consumption testimony, Mrak testified as to observing the intersection and debris field at the accident scene and also as to being immediately met with a strong odor of alcohol when he opened the door to the ambulance where Appellant was receiving medical attention. *Id.* at 8. Moreover, as the prosecution noted, Mrak's question to Appellant about whether he had been drinking (a question prompted by the odor of alcohol emanating from Appellant) was asked as part of Mrak's investigation into the accident, which he was laying out in chronological order. N.T., Trial, 6/9/19, at 24.

The trial court concluded that, based upon circumstantial evidence observed at the intersection and the odor of alcohol detected in the ambulance, "the Commonwealth proved by a preponderance of the evidence the *corpus delicti* of the crime of D.U.I. without [Appellant's] admission regarding his alcohol consumption[,]" thereby satisfying the first prong of the rule. Rule 1925(a) Opinion, 1/10/20, at 23. Further, the court indicated it would have considered Appellant's admissions as to alcohol consumption because "we believe the quantity of the other evidence presented, including Mrak's statement regarding his smelling of a strong odor of alcohol in the ambulance where [Appellant] was being treated and other evidence of [Appellant] driving, would be sufficient to prove [Appellant] guilty of D.U.I. beyond a reasonable doubt." *Id.* In light of the evidence, the court posited

- 12 -

that Appellant's admissions could be viewed as corroborative surplusage. ***Id.*** at 24. We find no abuse of discretion in the trial court's conclusions. Appellant is not entitled to relief based on the *corpus delicti* rule.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/20/20